UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TANIA EVETTE WRIGHT,

          Plaintiff,

    v.

SHALOM CENTER OF INTERFAITH
NETWORK OF KENOSHA COUNTY,

          Defendant.

Case No. 21-cv-1324-pp

---

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 44), DENYING PLAINTIFF'S MOTION TO AMEND PRODUCTION OF DOCUMENTS (DKT. NO. 46), GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 42) AND DISMISSING CASE**

---

The plaintiff, who is representing herself, lives in Racine, Wisconsin. Dkt. No. 1. Despite the fact that Racine County is in the Eastern District of Wisconsin, the plaintiff sued her former employer—the Shalom Center of Interfaith Network of Kenosha County—in the Western District of Wisconsin. Dkt. No. 1. Magistrate Judge Peter Oppeneer granted the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, after which the defendant moved to dismiss for improper venue, asking that if the court chose not to dismiss, it transfer the case to the Eastern District of Wisconsin, dkt. no. 10. On November 17, 2021, Chief Judge James Peterson declined to dismiss the case entirely, but transferred it to this district. Dkt. No. 14.

This court initially set a discovery deadline of January 15, 2023, dkt. no. 27, but later extended the deadline to February 10, 2023, dkt. no. 36. At the

1

defendant's request, the court granted an additional extension to June 30, 2023 for the sole purpose of allowing the defendant to depose the plaintiff, because she had failed to appear for her previously-scheduled deposition. Dkt. No. 39. The court ordered that the plaintiff must appear before June 30, 2023 to be deposed, and it vacated the deadline for filing summary judgment motions. Id. at 6. Instead, the court scheduled a status conference for July 13, 2023 at 2:30 p.m. by telephone. Id. The plaintiff did not appear for that telephonic status conference, but defense counsel reported that she'd appeared for her deposition on June 29, 2023. Dkt. No. 41. At the status conference, the court set a new summary judgment deadline of August 31, 2023. Id. The court mailed the minutes of that hearing to the plaintiff at her address in Racine.

At 1:24 p.m. on August 31, 2023—six months after the discovery deadline had expired and the day that summary judgment motions were due— the clerk's office file-stamped as received "Plaintiffs Motion to Compel." Dkt. No. 44. That document was accompanied by the "individual acknowledgment" of a notary who asserted that the plaintiff had signed the motion to compel that same day—August 31, 2023. Dkt. No. 44-1. At 1:38 p.m. on August 31, 2023, the clerk's office file-stamped as received the plaintiff's "Motion to Amend Production of Documents (1-26)." Dkt. No. 46. At 2:26 p.m. on August 31, 2023, the court received the defendant's motion for summary judgment. Dkt. No. 42.

As of the date of this order, the plaintiff has not responded to the defendant's motion for summary judgment. The defendant filed a brief in

opposition to the plaintiff's motions to compel and amend/correct the production of documents. Dkt. No. 48. The plaintiff has not filed a reply in support of either of her motions, but on November 21, 2023, the clerk's office received a document titled "Plaintiff's Inquiry/Update Regarding Motion to Compel." Dkt. No. 49. That document states:

> In addition to the court's communication dated September 1, 2023, and as of today's date, Saturday, November 18, 2023, Plaintiff has yet to hear from and or receive Discovery requested electronically filed and submitted on Thursday, August 31, 2023 from Defendant's Attorney Mr. Patrick F. Moran. As of date aforementioned, and before proceeding forward with future requests, Plaintiff wants to ensure the court has not yet receive responses or updates from Defendants and or its Attorney Mr. Patrick F. Moran pertaining to Discovery. I hope you will accept my apology for any inconvenience however I am at a standstill seeking and awaiting a response from Defendants. To date, November 18, 2023, please know I am temporary without access to my original cell number 262-977-5702, iCloud and tewright35@gmail.com. It is my hope to have my original contact information restored soon. However, for_now, in hopes to keep communication open, I am including the following: Mailing address, home number and secondary email. Thank you in advance for your response and any updates you may provide.

Id. at 1.

The September 1, 2023 "communication" to which the plaintiff refers is a docket annotation instructing the defendant to provide a Word version of its proposed findings of fact (which it had filed in support of its motion for summary judgment) through the court's proposed orders email box. Dkt. No. 47.

The plaintiff repeatedly has asked for extensions of time, dkt. nos. 29, 30, 32, 34, 37; did not appear for her first scheduled deposition and was uncooperative in providing dates she was available, dkt. no. 38; and failed to

3

appear for the July 13, 2023 court-ordered status conference, dkt. no. 41. In its May 19, 2023 order requiring the plaintiff to appear for her deposition, the court advised the plaintiff that she was required to comply with the Federal Rules of Civil Procedure even though she is not an attorney and even though she is representing herself, dkt. no. 39 at 4-5, but she has repeatedly failed to follow the federal and local rules. The defendant included in its summary judgment motion a warning about the consequences of failing to respond to the motion, dkt. no. 42, but the plaintiff has not done so. In short, the plaintiff—who chose to file this lawsuit in federal court—has been less than cooperative in litigating it.

The court will deny the plaintiff's motion to compel—it was untimely filed, it does not comply with federal or local rules and it does not make clear what the plaintiff is seeking. The court will deny the plaintiff's motion to amend production of documents because that motion was not timely filed and does not make clear what the plaintiff is seeking. Finally, the court will deem the defendant's proposed findings of fact to be admitted, grant the defendant's unopposed motion for summary judgment and dismiss the case.

## I.  Plaintiff's Motion to Compel (Dkt. No. 44) and to Amend Production of Documents (1-26) (Dkt. No. 46)

### A.  Content of the Motions

The plaintiff's motion to compel asserts that as of August 31, 2023, she had not received the defendant's responses "as it relates to 'Production of Documents #'d1-26' submitted around December 2022" and perhaps "Plaintiff's Discovery's TEW 0188-TEW0189 Filed 9/12/22 Page 7 of 10

4

Document 29." Dkt. No. 44 at 1. She asserts that although she submitted requests for production of documents and interrogatories to defense counsel by email and certified mail, she "has yet to receive pertinent discovery in its entirety." Id. She claims that as recently as June 2023, she had "reached out to Defendants to no avail." Id. She lists interrogatories 3 and 4 and document production requests 1-5, 7-18 and 20-25, which she asserts are "crucial" to her claims under the FMLA, FFCRA and ERISA. Id. In the next eight, single-spaced pages of the motion, the plaintiff reproduces the relevant discovery requests; in some instances, she provides the defendant's response, a "defendant answer" and her response. Id. at 2-9. Her responses explain why she believes the information she seeks is important to her case.

On the penultimate page of the motion, the plaintiff wrote:

> Up until as recent and the rescheduling of Deposition, June 28, 2023, Plaintiff has repeatedly asked Defendant's Attorney Mr. Patrick F. Moran for Production of Documents that Plaintiff reasonably believes will support complaint. More importantly, to date, August 31, 2023, COVID-19 (and other variants of COVID-19 still). With that being said, Plaintiff reasonably believes, not having the aforementioned documents will not allow the supporting of evidence in its entirety as it relates to complaint. In addition to Interrogatories Rule 33 and Pursuant to Production of Documents Rule 34, Dkt. No. 28 and Dkt. No. 32-1, Plaintiff therefore respectfully requests the Honorable Judge Pamela Pepper to consider this document a formal Motion to Compel of all discovery.

Id. at 9.

In a separate "Motion to Amend Production of Documents (1-26)," the plaintiff appears to ask leave to amend her complaint "as it pertains to resubmission Production of Documents Numbered 1-26." Dkt. No. 46 at 1. The plaintiff cites Fed. R. Civ. P. 15, emphasizing that that rule states that courts

5

should freely give leave to amend when justice requires it. Id. The plaintiff says that letting her amend her complaint "would establish communications between Plaintiff and Defendants as it relates to and also serve justice and promote judicial efficiency." Id. She says, "[t]hrough the Amended Complaint, Plaintiff seeks to resubmit separately Rule 34 Production of Documents if so granted by the Court, Honorable Judge Pamela Pepper." Id.

The plaintiff attached to this motion thirty-six pages of documents. Dkt. No. 46-1. They include (1) the court's May 19, 2022 order denying the defendant's motions for more definite statement and requiring the defendant to answer the complaint (id. at pages 1-4), (2) someone's handwritten notes that appear to be a chronology of events (id. at 5-6), (3) the defendant's answers to the plaintiff's interrogatories (id. at 7-20), (4) a document titled "Finding your 'why', Clarifying your life's purpose and finding value in whatever you do" from Advocate Aurora Health (id. at 21), (5) several pages of information about Family and Medical Leave Act procedures (id. at 22-25) and (6) the plaintiff's initial discovery disclosures (id. at 26-35).

B.    Defendant's Brief in Opposition

The defendant opposes the plaintiff's motion to compel because discovery closed on February 10, 2023 (except for the court's order requiring the plaintiff to submit to a deposition no later than June 30, 2023). Dkt. No. 48 at 1. The defendant recounts that the plaintiff did not appear for the July 13, 2023 status conference, during which the court ordered the parties to file dispositive motions by August 31, 2023. Id. It asserts that the plaintiff's motion to compel

6

"quarrels" with the answers the defendant provided to her discovery demands; it represents that it answered the plaintiff's interrogatories on November 2, 2022, produced documents with its initial Rule 26 disclosures and produced more documents on January 17, 2023. Dkt. No. 48 at 2. The defendant argues that the plaintiff had plenty of time between receipt of discovery and the date discovery closed to bring her motion to compel but did not do so; the defendant argues that she could have appeared at the July 13, 2023 status conference to voice her concerns but did not do so. Id.

As for the plaintiff's motion to amend, the defendant observes that while the plaintiff titled her motion as a motion to amend production of documents, the body of the motion appears to ask leave to amend the *complaint*. Id. at 3. It cites Seventh Circuit caselaw holding that when a plaintiff asks to amend a complaint "only after the filing of a successful summary judgment motion," the court should deny leave to amend. Id. (citations omitted).

C.    Analysis

1.    *Motion to Compel (Dkt. No. 44)*

Although the plaintiff is not a lawyer and is representing herself, "even *pro se* litigants must follow procedural rules." Collins v. Illinois, 554 F.3d 693, 697 (7th Cir. 2009). The court advised the plaintiff of this in its May 19, 2023 order. Dkt. No. 39 at 4. The motion to compel does not comply with this court's local rules or with the Federal Rules of Civil Procedure.

Civil Local Rule 7(a) of the Eastern District of Wisconsin requires that "[e]very motion must state the statute or rule pursuant to which it is made . . ."

7

The plaintiff's motion to compel does not cite any statute or rule. The court assumes that the plaintiff's motion is a Fed. R. Civ. P. 37(a) motion; that rule allows a party to move for an order compelling discovery "[o]n notice to other parties and all affected persons." Fed. R. Civ. P. 37(a)(1). The rule requires that the motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." This court's Civil L.R. 37 goes further; it requires that

> [a]ll motions to compel disclosure or discovery pursuant to Fed. R. Civ. P. 26 through 37 must be accompanied by a written certification by the movant that, after the movant in good faith has conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action, the parties are unable to reach an accord. The statement must recite the date and time of the conference or conferences and the names of all parties participating in the conference or conferences.

There is no separate certification attached to the plaintiff's motion to compel. The motion itself says that "[a]s recent as June 2023, Plaintiff has reached out to Defendants to no avail." Dkt. No. 44 at 1. Although the plaintiff refers to "Defendants" plural, there is only one defendant, and the motion does not state the date and time of the June 2023 "reaching out" or identify the person to whom the plaintiff "reached out." The motion also says that "[u]p until as recent and the rescheduling of Deposition, June 28, 2023, Plaintiff has repeatedly asked Defendant's Attorney Mr. Patrick F. Moran for Production of Documents that Plaintiff reasonably believes will support complaint." Id. at 9. While this statement identifies the name of the person with whom the plaintiff says she spoke, it again fails to recite the dates and times of the plaintiff's

8

contact with Attorney Moran, nor does it state that the two were unable to reach an accord after speaking.

Even if the plaintiff had complied with the national and local rules in filing the motion to compel, the motion was not timely filed. In its January 9, 2023 scheduling order, the court extended the deadline for completing fact discovery to February 10, 2023. Dkt. No. 36. If, as the defendant represents, it answered the plaintiff's interrogatories on November 2, 2022, the plaintiff had three months between that date and the close of discovery to file a motion to compel responses to the interrogatories. If, as the defendant represents, it provided documents on January 17, 2023, the plaintiff had over three weeks before the close of discovery to file a motion to compel production of any documents she believed were missing. Instead, she filed the motion six months after the close of discovery, on the date that dispositive motions were due.

"District courts have broad discretion in discovery matters . . . ." Packman v. Chi. Tribune Co., 267 F.3d 628, 646 (7th Cir. 2001). "[C]ourts are rarely found to have abused their discretion when they deny a motion to compel that comes after the discovery deadline." United States *ex rel.* Gill v. CVS Health Corp., Case No. 18 C 6494, 2024 WL 406510, at *3 (N.D. Ill. Feb. 2, 2024) (citations omitted). The court has broad discretion "to deny a discovery motion filed after the discovery deadline in the case has passed, especially where the moving party has failed to establish good cause for the late filing." Assaf v. OSF Healthcare Sys., Case No. 11-CV-04108, 2014 WL 3865891, at *1 (C.D. Ill. Aug. 6, 2014) (citations omitted). When evaluating good cause, a court

"primarily considers the diligence of the party seeking amendment" of a deadline. Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am., 424 F.3d 542, 553 (7th Cir. 2005). The plaintiff has provided no explanation for waiting six months after the discovery deadline expired to file her motion.

The court considered the fact that the plaintiff may have been confused by its May 19, 2023 order extending the discovery deadline to June 30, 2023 for the purpose of allowing the defendant to depose the plaintiff. But the court's order stated that it found good cause "to extend the discovery deadline *for the limited purpose of allowing the defendant to depose the plaintiff. The court is not aware of any other outstanding discovery requests.*" Dkt. No. 39 at 4. Further, even if the plaintiff had mistakenly believed that the court had extended the deadline for *all* discovery until June 30, 2023, she did not file her motion to compel before that deadline expired—she filed it two months later. Any way the court slices it, the plaintiff's motion to compel was not timely filed.

Third, the court cannot determine what it is the plaintiff wants the court to compel the defendant to produce. She did not attach copies of the discovery demands that she served on the defendant.[1] For the two relevant interrogatories, the plaintiff retyped them and provided the defendant's objections and her arguments. As to Interrogatory No. 3, the motion states:

> **PLAINTIFF INTERROGATORY NO. 3**: State the name, title, address and job description of each director, partner, shareholder, employee, office, and manager of Defendant who authorized, approved, or was aware of the collection of PTO, Vacation, EM FLA, FFCRA, FMLA, other requests Plaintiff sent to Defendant pertaining to complaint.

---

[1] The plaintiff *did* attach to her motion to amend production of documents the defendant's answers to her thirteen interrogatories. Dkt. No. 46-1 at 7-20.

**DEFENDANT OBJECTIONS:** (Plaintiffs Discovery's TEW 0165-0166): Defendant objects to interrogatory on the grounds that it is impermissibly vague as well as misleading. The interrogatory is vague in that it asks for identities of persons that authorized or approved various leaves, which is definite enough. However, it also requests identities of those "aware of the collection of" leave or "other requests," which are impermissibly undefined and vague. The interrogatory is also misleading as it assumes plaintiff was entitled to various leave under law that she was not.

**DEFENDANT ANSWER:** Without wa[i]ving the above objections, Defendant answers that Wendy Cross, Lisa Sanders, Tamarra Coleman, and Mike Tyson all variously were aware of and approved of Plaintiff's request for PTO in May 2020. Coleman and Tyson additionally have knowledge of Defendant's payment of wages to Plaintiff under the terms of the FFCRA. Finally, Coleman and Tyson have knowledge of Plaintiff's request for unpaid time off allegedly pursuit to the Emergency Family Medical Leave Act Amendments of 2020 and the basis for denial of the same.

**PLAINTIFF RESPONSE:** Plaintiff reasonably believes this interrogatory no. 3 is a crucial part and foundational basis of complaint in that it establishes the unknown, doubt, questions under the umbrella surrounding discrepancies, inconsistency in "The Center's Rules, Practices and Policies." Also, there are possibilities and Local, State, and Federal Violations on the grounds and umbrella of inequalities, discrimination. Without Plaintiffs requested interrogatory answered by Defendants there is uncertainty.

Dkt. 44 at 2, 3.

It appears to the court that the plaintiff asked the defendant to provide her with information about the people who "authorized, approved, or was aware" of the plaintiff's leave requests; the defendant objected to the form of the question but nonetheless identified those people. The plaintiff says that without the "interrogatory answered . . . there is uncertainty," but her own motion shows that the defendant answered the interrogatory. There does not appear to be anything for the court to compel the defendants to provide.

11

As to Interrogatory No. 4, the motion states:

**PLAINTIFF INTERROGATORY NO. 4:**

State the names, aliases, job title, business and home addresses and telephone numbers, date of initial employment and date of reason for termination of employment of each of your employees: (a) who contacted plaintiff or another person regarding this complaint; (b) who left your employ within the last two years; and (c) the reasons such document is allegedly privileged.

**DEFENDANT OBJECTION (Plaintiff Discovery's TEW 0166-0167):**

Defendant objects to this interrogatory on the grounds that it is impermissibly vague and seems to call for attorney-client communication and documents or data protected by the attorney-client work product doctrine. Plaintiff reasonably believes interrogatory is crucial and pertinent to complaint as it will establish possibly past, present and future code of standard conduct, ethics, equality, employment, terminations inconsistencies within Defendant's Rules, Practices, Compliances and Non-Compliances as it relates to Local, State and Federal Rules, Human Rights, Civil Rights, Regulations and or Laws.

Dkt. No. 44 at 2-3.

The plaintiff does not explain whether the defendant provided any information in response to this interrogatory and, if so, what it was.[2]

More to the point, Judge Peterson allowed the plaintiff to proceed on

---

[2] As the court has observed, the plaintiff attached to her motion to amend production of documents the defendant's responses to her interrogatories. Dkt. No. 46-1 at 7-20. That document shows that the defendant answered that it was unaware of any person who met the description in subsection (a) of the interrogatory and that it was not withholding any information due to privilege. Id. at 10. As for the plaintiff's request in subsection (b) of the interrogatory, asking for detailed information about any employee who'd left the defendant's employ within the previous two years, the defendant objected that the request was overly broad and that information about other employees was not relevant to the plaintiff's claims of retaliation for her own conduct. Id. The defendant also asserted that the request was disproportional to the needs of the case. Id.

12

claims under the Family and Medical Leave Act, the Families First Coronavirus Response Act and the Employee Retirement Income Security Act—not on violations of codes of conduct or ethical violations or violations of the defendant's own policies or human or civil rights laws.

For her requests for production of documents, the plaintiff provided even less information. She retyped each request and followed it by her explanation of why she believes the documents she seeks are critical to her case. Dkt. No. 44 at 3-8. But she did not explain whether the defendant had refused to produce any documents in response to each request, or had produced only some documents when the plaintiff believed more were available, or had claimed that it did not have documents responsive to the requests. The motion says nothing about the defendant's response to these requests for production, even though the defendant says that it provided documents both with its initial discovery disclosures and in mid-January 2023.

Fourth, even if the plaintiff had complied with the rules, timely filed her motion and clearly explained what the defendant had and had not produced, the court likely would have denied the motion to compel. The plaintiff's requests are broad, often missing any time frame for the information or documents she is seeking. Some of them are vague, such as her request for "[a]ll documents associated with Plaintiff pleadings." Dkt. No. 44 at 4. Many of the requests seek information about non-parties, such as their home addresses and telephone numbers and

13

reasons why former employees were fired. The court will deny the motion

to compel.

        2.    *Motion to Amend Production of Documents (1-26) (Dkt. No. 46)*

The motion to amend production of documents consists of only three

paragraphs. It says:

> For all the reasons, and those attached in support to Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff, Tania Evette Wright, Pro se litigant respectfully request that the Court Grant Plaintiff leave to file the Motion to Amend Complaint as it pertains to resubmission of Production of Documents Numbered 1-26.

> Rule 15 provides that "a party may amend its pleading (with) the court's leave" and that the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiff move to file the Amended Complaint within the time permitted by the Court in the scheduling order (Dkt. 40). Allowing Plaintiff to file the Amended Complaint would establish communications between Plaintiff and Defendants as it relates to and also serve justice and promote judicial efficiency.

> Through the Amended Complaint, Plaintiff seeks to resubmit separately Rule 34 Production of Documents if so granted by the Court, Honorable Judge Pamela Pepper.

Dkt. No. 46 at 1.

The plaintiff filed her complaint—the document that started this

lawsuit—over three years ago, on April 26, 2021. Dkt. No. 1. Fed. R. Civ. P.

15(a)(1) allows a party to amend her pleading one time, without getting the

court's permission first, if she does so within twenty-one days after serving it or

within twenty-one days after the defendant answers. Those deadlines have long

passed. Rule 15(b)(2) allows a party to amend "only with the opposing party's

14

written consent or the court's leave." As the plaintiff points out, the rule says that the court "should freely give leave when justice so requires."

*If* the plaintiff truly seeks to leave to amend her *complaint*—the document that initiated this lawsuit over three years ago—she had not shown why justice requires the court to allow her to do so. The plaintiff says that she is moving to file the amended complaint within the time this court permitted in the scheduling order, and she cites to Dkt. No. 40. But Dkt. No. 40 does not include a deadline for amending the complaint. Only the original scheduling order—which the court issued on July 18, 2022—included a deadline for amending the pleadings without leave of court. Dkt. No. 27. That deadline was September 12, 2022, some twenty-two months ago. Dkt. No. 40 is the audio recording of the July 13, 2023 status conference that the plaintiff failed to attend. Dkt. No. 40. The recording and the minutes reflect that the only deadlines the court set at that hearing were the August 31, 2023 deadline for filing dispositive motions (motions for summary judgment, essentially) and the response and reply deadlines for such motions. Dkt. No. 41.

The plaintiff says that allowing her to amend the complaint would "establish communications between Plaintiff and Defendants as it relates to and also serve justice and promote judicial efficiency." The court does not know what this means—the plaintiff and the defendant are free to communicate with each other, and allowing a plaintiff to amend her complaint three years into her lawsuit, after discovery has closed and the defendant has filed a motion for summary judgment, certainly would not promote judicial efficiency.

15

If the plaintiff had complied with this court's Civil L.R. 15, the court might have a better sense of whether the plaintiff actually wants to amend her *complaint* and why. Civil Local Rule 15(b) requires a plaintiff asking for leave to amend a pleading to state specifically what changes she seeks to make by amending and to file the proposed amended pleading as an attachment to her motion. The plaintiff did not attach a proposed amended complaint to her motion, and she has not explained what changes she wants to make to the original complaint.

The court will not allow the plaintiff to amend her April 2021 *complaint.* But the court suspects that that is not what the plaintiff is trying to do. The court suspects that the plaintiff is trying to obtain the court's permission to serve additional discovery requests on the defendant. The motion says that the plaintiff is seeking leave to amend "as it pertains to resubmission Production of Documents Numbered 1-26." This appears to be a reference to the plaintiff's requests for production of documents—one of her *discovery* requests; according to her motion to compel, she submitted at least twenty-five such requests to the defendant. Among the thirty-six pages of attachments to the motion, the plaintiff included the defendant's answers to her thirteen interrogatories and her own Rule 26(a)(1) initial disclosures. These are *discovery* documents. The motion says that allowing the plaintiff to amend will "establish communication" between the plaintiff and the defendant. As the court has recounted, in her motion to compel, she asserted that she had tried to "reach out" to or contact defense counsel several times to discuss *discovery* issues; her statement in the

motion for leave to amend that amending will "establish communication" appears to be an expression of her belief that if she is allowed to serve more discovery, the defendant will respond. And she says in the motion that "[t]hrough the Amended Complaint," she "seeks to resubmit separately Rule 34 Production of Documents." This sounds as if the plaintiff thinks that she must "amend" something to be able to serve additional requests for production of documents.

The letter the court received from the plaintiff on November 21, 2023 supports this suspicion. In that letter, the plaintiff seemed to assume that on August 31, 2023, she had served additional discovery on the defendant and that the defendant had not responded. Dkt. No. 49. She said that as of the date she wrote the letter, she had "yet to hear from or receive Discovery requested electronically filed and submitted on Thursday, August 31, 2023 from Defendant's Attorney Mr. Patrick F. Moran." Id. She said she did not want to proceed with any "future requests" before ensuring that the court had not received any responses or updates from defense counsel. Id. While this letter betrays a fundamental misunderstanding of how discovery works—parties do not file discovery demands with the court or file their responses to discovery demands to the court—it implies that the plaintiff believes that whatever she filed on August 31, 2023 constituted additional discovery demands served on the defendant.

If, rather than seeking leave to amend her April 2021 complaint, the plaintiff is seeking leave to serve additional discovery requests on the

17

defendant, the court will not allow that, either. The time to request an extension of the long-expired discovery deadline has passed. The court has denied the plaintiff's motion to compel. If the plaintiff wanted more discovery, or more time to conduct discovery, she should have asked for it while the discovery period was open.

## II.    Defendant's Motion for Summary Judgment (Dkt. No. 42)

A.    Legal Standard

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences in the light most favorable to the non-moving party. Johnson v. Advocate Health & Hosps. Corp., 892 F.3d 887, 893 (7th Cir. 2018) (citing Parker v. Four Seasons Hotels, Ltd., 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." Id. Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Austin v.

18

Walgreen Co., 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The defendant complied with Civil L.R. 56(a)(1), which requires attorneys litigating against self-represented parties to include the relevant local and federal rules with their motions for summary judgment and to explain that the court will deem uncontradicted facts as true for purposes of deciding the motion. The defendant warned the plaintiff that any factual assertion in its "affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless you submit your own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion." Dkt. No. 42 at 1 (citing Civil L.R. 56(a)).

The defendant filed its motion almost eleven months ago. As the court has stated, the plaintiff has not responded, despite the fact that at the July 13, 2023 hearing, the court ordered that responses to summary judgment motions were due by September 5, 2023. Dkt. No. 41. Although the plaintiff did not attend that hearing, the court mailed her a copy of the minutes, which contain the deadlines the court had set. Although the plaintiff appears to be confused about the purpose of the deadlines the court set at the July 13, 2023 hearing, that does not change the fact that both the court and defense counsel provided her with the deadlines and defense counsel warned her of the likely result of failing to respond to the summary judgment motion.

Because the plaintiff has not responded to the motion for summary judgment or the defendant's proposed statements of material fact, the court

19

deems uncontroverted the defendant's statements of material fact for the purpose of deciding summary judgment. Civil L.R. 56(b)(4).

      B.    <u>Statements of Fact</u>

The defendant operates as the only homeless shelter, largest food pantry, and longest running nightly meal program in Kenosha County. Dkt. No. 45 at ¶1. It provides housing, food, guidance and support to individuals and families in need across the Kenosha County community. <u>Id.</u>

The defendant employed the plaintiff in 2017. <u>Id.</u> at ¶2. Beginning in 2019, she held the title of full time Shelter Supervisor. <u>Id.</u> The position of Shelter Supervisor is not a job that can be performed remotely or via telework. <u>Id.</u> at ¶3.

The defendant published an employee handbook on February 4, 2020 that contained all available types of leave for its employees, including the plaintiff. <u>Id.</u> at ¶4. The plaintiff acknowledged receipt of that handbook on February 4, 2020. <u>Id.</u> According to the handbook, and in practice, employees can accumulate Paid Time Off and can use it with advance notice. <u>Id.</u> at ¶5.

The handbook also provides that employees may be entitled to the following categories of leave that respectively have the following qualifications:

    (i)    Sick Leave: If an employee is individually ill, they are required to notify their supervisor about the need to be excused from work. Repeated or lengthy illnesses may require medical documentation.

    (ii)    Unpaid Leave: If an employee has been employed for more than a year and has no Paid Time Off available, the employee can request an unpaid leave of absence for up to thirty days for the employee's own health reason or the health reason of the employee's child or spouse. The defendant's Unpaid Leave

20

policy expressly notes that the Wisconsin Family and Medical Law (WIFMLA)[3] has a jurisdictional hurdle of applying only to employers with fifty regular full-time employees (and other qualifications).

(iii) Excused Leave: If an employee is qualified for other allowable leaves (bereavement leave, jury duty, military leave, election leave, or other personal leave), the defendant will grant such requests. The Executive Director and the Board of Directors must approve any other leaves.

Id. at ¶6.

Due to its size, the defendant is not and never has been an "employer" for purposes of the Family Medical Leave Act. Id. at ¶7. The purpose of citing to the WIFMLA in the February 4, 2020 handbook was to provide notice to employees that WIFMLA (and the federal FMLA) is unavailable. Id. The February 4, 2020 employee handbook does not contain any promise of job-protected family or medical leave. Id.

The defendant sponsors—and the plaintiff participated in—a group policy of Short Term Disability ("STD") benefits. Id. at ¶8. The STD benefits were available to the plaintiff in the event that she qualified for them if she suffered from a short-term disability. Id. The eligibility for, and requirements for submission of a claim for, STD benefits were governed by the STD plan documents. Id.

---

[3] Wisconsin's version of the Family and Medical Leave Act, which applies to employers with at least fifty permanent employees during at least six of the preceding twelve months. https://dwd.wisconsin.gov/er/civilrights/fmla/.

In March, 2020, the onset of the COVID-19 in Wisconsin had an effect on all business, including the defendant. Id. at ¶9. However, the defendant's shelter—where the plaintiff was employed as a Supervisor—remained open. Id. All available reasonable precautions were taken against COVID-19 for the safety of the shelter's employees and clients. Id. at ¶10. Nevertheless, in-person attendance at the shelter was a requirement of the job of Shelter Supervisor. Id.

The plaintiff last appeared for work on or about May 14, 2020. Id. at ¶11. She was paid for all hours worked through that date. Id. On May 14, 2020, the plaintiff asked to use her available and accumulated Paid Time Off (PTO). Id. at ¶12. She stated that she was requesting off through May 30, 2020 due to care of a senior family member and to prevent possible exposure to COVID-19. Id. The plaintiff was allowed to utilize all her available PTO, which allowed her to receive pay through May 30, 2020. Id. at ¶13.

On May 30, 2020, the plaintiff wrote a letter citing the Families First Coronavirus Relief Act (FFCRA) and what she titled the "Emergency Paid Family and Medical Leave Act." Id. at ¶14. In that correspondence, the plaintiff requested an indefinite leave of absence for the "care of [her] daughter whose school is closed" and "care[] for an individual subject to quarantine." Id. The defendant approved the request for paid leave under the FFCRA's Employee Paid Sick Leave Act ("EPSLA") and provided the plaintiff paid leave from May 30, 2020 through mid-June, 2020. Id. The plaintiff received the equivalent of

her full-time wages through June 20, 2020 through a combination of accumulated PTO and EPSLA. Id. at ¶15.

By mid-June, the plaintiff had no other available leave that would allow her to remain off work and receive pay. Id. at ¶16. Specifically, she could not—and did not—submit a claim for STD benefits. Id. The plaintiff never identified a qualifying disability to herself nor sought to file an STD benefits claim at any time for any qualifying reason. Id. at ¶16(i). As of mid-June, 2020, the plaintiff's child's school (in the Kenosha County Unified School district) had ended classes for summer vacation. Id. at ¶16(ii). After the end of May 2020 and despite the defendant's request, the plaintiff never provided the defendant any documentation (medical or otherwise) that she needed to remain off work to care for an individual subject to quarantine. Id. at ¶16(iii).

After all her available paid leave expired, there were communications between the defendant and the plaintiff about her return to work. Id. at ¶17. She called the defendant on June 24, 2020 and spoke with the defendant's Finance & Business Director. Id. at ¶17(i). The plaintiff stated that she was waiting on a doctor to send information related to her care of a family member under quarantine. Id. The plaintiff also stated that she was "uncomfortable" sending her daughter to camp due to COVID-19 and that other family members who would normally watch her daughter were unavailable. Id. Under oath at her deposition, the plaintiff stated that her "plans changed" but that her personal decision not to allow family members take care of her daughter was due to a "safety concern." Id.

On June 28, 2020, the plaintiff wrote to the defendant's Finance and Business Director and confirmed the conversation of June 24, 2020, asking for the FFCRA's Medical Leave Expansion Act (MLEA) leave to "minimize [her] risk exposure and potential exposure of [her] daughter" to COVID-19. Id. at ¶17(ii). On June 29, 2020 at 10:59 am, the defendant confirmed in writing to the plaintiff that any additional time off would need to be approved. Id. at ¶18. The defendant never approved any further time off after that communication. Id.

On August 28, 2020, the defendant issued a termination letter from its Finance and Business Director to the plaintiff documenting that it had separated the plaintiff's employment. Id. at ¶19. After receiving the notification, the plaintiff objected to the termination and wrote letters to the defendant's Executive Director requesting re-evaluation. Id. at ¶20. After the Executive Director reviewed the communications, the law and all circumstances, he wrote a letter to the plaintiff confirming the separation as well as again stating the defendant's basis for the separation. Id. at ¶23.

The plaintiff's complaint and the court's screening order identify three claims under the FMLA, the FFCRA and ERISA. Dkt. No. 4 at 3.

C.    Conclusions of Law

The defendant moves for summary judgment on each of the plaintiff's three claims.

1.    *FMLA*

The defendant argues that it is not subject to the FMLA and did not interfere with any right provided by the FMLA. Dkt. No. 43 at 1. The FMLA,

24

which provides eligible employees up to twelve weeks of unpaid leave in any twelve-month period, makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. §2615. The primary aim of the FMLA is "to balance the demands of the workplace with the needs of families ... in a manner that accommodates the legitimate interests of employers...." 29 U.S.C. §2601(b)(1) & (3)). Congress defined employer as any "person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A). In other words, small employers (those with fewer than fifty employees) are exempt. It is undisputed that the defendant has not "employ[ed] 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year for any year in the last five years." Dkt. No. 43 at 2 (citing 29 U.S.C. §2611(4)(A)(i)); Dkt. No. 45 at ¶¶1, 7. Because the defendant was not a covered "employer" under the FMLA, the court will dismiss the FMLA claim.

        2.    *FFCRA*

In March 2020, Congress enacted the Families First Coronavirus Response Act as a temporary response to the COVID-19 pandemic. Pub. L. No. 116-127, 134 Stat. 178 (2020). The FFCRA had two major provisions: (1) the Emergency Paid Sick Leave Act (EPSLA), Pub. L. No. 116-127, §§5101–5111, 134 Stat. 195, 195–201 (2020), and (2) the Emergency Family and Medical

25

Leave Expansion Act (EFMLEA), Pub. L. No. 116-127, §§3101–3106, 134 Stat. 189, 189–92 (formerly codified at 29 U.S.C. §§2612, 2620) (2020)).

Generally, the EPSLA required covered employers to provide up to 80 hours of paid sick leave to employees who were unable to work or telework for a qualifying COVID-19-related reason. See Pub. L. No. 116-127, §5102(a)–(b). The COVID-related reasons had to fall into one of six categories:

(1)　The employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19.

(2)　The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19.

(3)　The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis.

(4)　The employee is caring for an individual who is subject to an order as described subparagraph (1) or has been advised as described in paragraph (2).

(5)　The employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions.

(6)　The employee is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor

Id.; 29 C.F.R. §826.20(a)(1). The Act also provided,

It shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who—

(1)　takes leave in accordance with the Act; and

(2)　has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (including a proceeding that seeks enforcement of this Act), or has testified or is about to testify in any such proceeding.

Id. at §5104; 29 C.F.R. §826.150(a).

The EPSLA provided its own enforcement mechanism for violations of either §5102 (failure to pay during leave) or §5104 (discharging, disciplining or otherwise discriminating based on taking leave):

Enforcement –

(a)    UNPAID SICK LEAVE.—An employer who violates section 5102 shall—
(1) be considered to have failed to pay minimum wages in violation of section 6 of the Fair Labor Standards Act of 1938 (29 U.S.C. 206); and
(2) be subject to the penalties described in sections 16 and 17 of such Act (29 U.S.C. 216;217) with respect to such violation.

(b)    UNLAWFUL TERMINATION.—An employer who willfully violates section 5104 shall—
(1) be considered to be in violation of section 15(1)(3) of the Fair Labor Standards Act of 1983 (29 U.S.C. 215(a)(3)); and
(2) be subject to the penalties described in section 16 and 17 of such Act (29 U.S.C. 216; 217) with respect to such violation.

Id. at §5105; 29 C.F.R. § 826.150(b).

The defendant argues that the court should dismiss the plaintiff's claims under the FFCRA because it complied with the FFCRA in all respects. Dkt. No. 43 at 3. The undisputed facts establish that the plaintiff requested—and the defendant granted—two weeks of paid leave under the EPSLA. Dkt. No. 45 at ¶14. The defendant has documented that it allowed the plaintiff to use accrued paid time off in addition to her requested two weeks of EPSLA pay. Id. at ¶13.

As for the plaintiff's claim under the Emergency FMLA Expansion Act, the defendant points out that when the act was in force "an Eligible Employee [could] file a private action to enforce the EFMLEA only if the Employer [was] otherwise subject to the FMLA in the absence of EFMLEA." Dkt. No. 43 at 4. See 29 C.F.R. §826.151(b)(eff. April 2, 2020 to December 31, 2020). The court

27

already has found that the defendant was not otherwise subject to the FMLA. The defendant also proffered evidence that the plaintiff would not have qualified for the EFMLEA. Dkt. No. 43 at 4-5. The EFMLEA restricted the definition of a "qualifying need related to a public health emergency" to situations where "the employee is unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to a public health emergency." 29 U.S.C. §2620(a)(2)(A). A "public health emergency" means one "with respect to COVID-19 declared by a Federal, State, or local authority." Id. §2620(a)(2)(B). The undisputed facts show that the plaintiff requested additional leave while her daughter was home on summer vacation (rather than when the school normally would have been operating but was closed due to COVID-19). And, unlike EPSLA, the EFMLEA did not provide leave to care for an "individual subject to quarantine." The court will dismiss the plaintiff's claims under the EPSLA and EFMLEA.

      3.    *ERISA*

Finally, the defendant argues that the plaintiff has not stated an ERISA claim because no benefits were in dispute or denied. Dkt. No. 43 at 7-8. To recover under ERISA, an employee must demonstrate that (1) she is a member of an ERISA plan; (2) she was qualified for the position; and (3) she was discharged under circumstances that provide some basis for believing that the employer intended to deprive her of benefits. Kampmier v. Emeritus Corp., 472

F.3d 930, 943 (7th Cir. 2007). The defendant concedes that the plaintiff was a member of the ERISA plan, specifically the defendant's Short Term Disability plan. Dkt. No. 45 at ¶8. The undisputed evidence establishes, however, that the plaintiff never filed a claim for benefits and would not have qualified because she had not demonstrated that she had any disabilities (short or long-term). There is no evidence in the record to suggest that the defendant acted to interfere with the plaintiff's rights or deprive her of a benefit. There is no genuine issue of fact that the defendant terminated the plaintiff because she took unapproved leave for the majority of the summer of 2020.

Because the defendant's proposed material facts are undisputed and because those facts demonstrate that the plaintiff is not entitled to relief under any of the laws under which she has sued, the court will grant the defendant's motion for summary judgment and will dismiss the case.

III.  **Conclusion**

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 44.

The court **DENIES** the plaintiff's motion to amend production of documents. Dkt. No. 46.

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 42.

The court **ORDERS** that this case is dismissed. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by

29

filing in this court a notice of appeal within 30 days of the entry of judgment. <u>See</u> Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. <u>See</u> Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, she should be aware that the appellate filing fee is $605. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, she must file a motion *in this court*. <u>See</u> Fed. R. App. P. 24(a)(1).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 19th day of July, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**